No. 22-3602

<hr>

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<hr>

ELECTRONIC MERCHANT SYSTEMS LLC, *Plaintiff-Appellant*,

v.

PETER GAAL, *Defendant-Appellee*.


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO, EASTERN DIVISION
Case No. 1:20-cv-01898
The Honorable Dan A. Polster, U.S. District Judge

<hr>

**BRIEF OF DEFENDANT-APPELLEE PETER GAAL**

<hr>

Alexander J. Durst                Tel: (513) 621-4999
Gray R. Proctor                   Fax: (513) 621-0200
THE DURST LAW FIRM                Email: alex@durstlawfirm.com
810 Sycamore Street, 2nd Floor            gray@durstlawfirm.com
Cincinnati, OH 45202

## CORPORATE DISCLOSURE STATEMENT

Under F.R.A.P. 26.1 and 6 Cir. R. 26.1, Defendant-Appellee is exempt from the requirement to provide a corporate disclosure statement because Defendant-Appellee is not a corporation, but rather, a natural person.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ...............................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................2

STATEMENT OF THE CASE.........................................................................5

STATEMENT OF FACTS ...........................................................................6

SUMMARY OF ARGUMENT .....................................................................11

ARGUMENT ...........................................................................................14

I.  The Court Should Affirm the Dismissal of EMS's Complaint. ...................14

    A.  The District Court Properly Dismissed EMS's Claim for Breach of Contract. ...........................................................................................14

    B.  The District Court Did Not Abuse its Discretion in Considering Undisputed Information Contained Within EMS's Proof of Claim. ..19

    C.  Because Further Amendment Would Have Been Futile or Fraudulent, the District Court Properly Exercised its Discretion in Dismissing EMS's Complaint with Prejudice........................................................20

    D.  The District Court Properly Applied the 2019 Agreement to All Chargebacks Occurring After its Effective Date. ...............................23

    E.  The District Court Correctly Determined that Gaal's Personal Guaranty Died with the Termination of the 2014 Agreement. ...........26

CONCLUSION .......................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amini v. Oberlin Coll.*,
259 F.3d 493 (6th Cir. 2001) ...................................................................18

*Bates v. Green Farms Condo. Ass'n*,
958 F.3d 470 (6th Cir. 2020) ...................................................................18

*Chapman Drug Co. v. Brewer*,
390 F. Supp. 264 (E.D. Tenn. 1974)........................................................25

*Hancock v. Miller*,
852 F. App'x 914 (6th Cir. 2021) ............................................................18

*In re Fifth Third Early Access Cash Adv. Litig.*,
925 F.3d 265, 276 (6th Cir. 2019) ...........................................................13

*Kinch v. Pinnacle Foods Grp., LLC*,
758 F. App'x 473 (6th Cir. 2018) ............................................................24

*Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*,
210 F.3d 672 (6th Cir. 2000) ...................................................................21

*Mackie v. Sippel*,
No. 11-CV-06146, 2013 U.S. Dist. LEXIS 3956,
at *20 (W.D.N.Y. Jan. 8, 2013) ..............................................................20

*Orlandi v. Leavitt Family Ltd. P'ship (In re Orlandi)*,
612 B.R. 372 (6th BAP 2020)..................................................................22

*Price v. Jefferson Cnty. Kentucky*,
9 F. App'x 369, 370 (6th Cir. 2001)........................................................18

*R.L.R. Invs., LLC v. Wilmington Horsemen's Group LLC*,
22 N.E.3d 233 (Ohio Ct. App. 2014)..................................................22, 23

*Rondingo, LLC v. Twp. of Richmond*,
641 F.3d 673 (6th Cir. 2011) ...................................................................18

iii

*Santo's Italian Café LLC v. Acuity Ins. Co.*,
508 F. Supp. 3d 186 (N.D. Ohio 2020)....................................................24

*Savedoff v. Access Grp., Inc.*,
524 F.3d 754, 763–64 (6th Cir. 2008) ....................................................21

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
552 F.3d 430 (6th Cir. 2008) ...........................................................19, 20

*United Food & Commer. Workers Union, Loc. 1099*
*v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341 (6th Cir. 1998) ..............24

*United States v. Russell*,
26 F.4th 371 (6th Cir. 2022) ...................................................................24

*Westfield Ins. Co. v. Galatis*,
100 Ohio St.3d 216, 797 N.E.2d 1256, 1261–62 (2003) ........................15

# STATEMENT REGARDING ORAL ARGUMENT

This straightforward diversity case requires the Court to apply established principles of contract interpretation, as the outcome turns on the construction of clear and unambiguous contracts. Oral argument is therefore unnecessary.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Did the district court correctly conclude that "Gaal's personal guaranty does not extend to any of the chargeback debt that EMS seeks to recover in this action," foreclosing Plaintiff-Appellant Electronic Merchant Systems LLC's ("EMS") breach of contract claim against Defendant-Appellee Peter Gaal as a matter of law?

a.    Did the district court correctly interpret Gaal's personal guaranty, contained within a "2014 Agreement" between Procom America, LLC ("Procom") and EMS, as applying only to Procom's obligations arising under a "2014 Agreement" – and not extending to Procom's obligation under other agreements not yet in existence at the time the guaranty was executed – where the guaranty unambiguously limits Gaal's obligations to "[Procom's] obligations under [the 2014] Agreement?"

b.    Did the district court correctly interpret the "2019 Agreement" between Procom and EMS, which was not personally guaranteed by Gaal, as superseding the 2014 Agreement, based on, inter alia, (i) the 2019 Agreement's integration clause expressly stating: "[The 2019 Agreement] supersedes all prior and contemporaneous agreements and understandings [between EMS and Procom], and (ii) the "chargeback provision" being altered to EMS's benefit in the 2019 Agreement to increase the chargeback fee?

c.    Did the district court properly reject EMS's claim, *contrary to the express terms of the 2019 Agreement*, that EMS "intended" for the 2019 Agreement to "supplement," rather than supersede, the 2014 Agreement, on the basis that a party's subjective intent has no role in contract interpretation where the relevant contract language is plain and unambiguous?

d.    Did the district court properly conclude that the chargebacks at issue in the case, every one of which occurred <u>after</u> the effective date of the 2019 Agreement and resulted in a $45.00 fee in accordance with the 2019 Agreement, arose under the 2019 Agreement, placing them outside the reach of Gaal's personal guaranty?

2.    Did the district court abuse its discretion by taking judicial notice of the proof of claim EMS filed in Procom's bankruptcy proceeding where EMS *never objected* to the district court taking such judicial notice and does not dispute the accuracy of the facts gleaned from the proof of claim, which was signed by EMS's CFO under penalty of perjury?

3.    Did the district court properly disregard the affidavit of Daniel Moenich, where the affidavit (a) presented impermissible matters beyond the pleadings, (b) contained a factual allegation about certain chargeback dates that EMS concedes is untrue (and which contradicted EMS's sworn proof of claim and even information contained in the affidavit's own exhibits), and (c) needlessly re-

alleged verbatim allegations about EMS's subjective intent in entering into the 2019 Agreement that (i) were already included in EMS's amended complaint (and thus were considered by the district court) and (ii) are irrelevant to the interpretation of the clear and unambiguous 2019 Agreement?

4.    Did the district court, despite the Moenich affidavit's numerous deficiencies, abuse its discretion by dismissing EMS's complaint with prejudice instead of converting Gaal's motion into one for summary judgment in order so that it could consider the Moenich affidavit, or alternatively, permitting EMS to file a second amended complaint adding the allegations set forth in the Moenich affidavit, where EMS did not make a request for such relief, and further, where not a single allegation contained in the affidavit (nor any other fact) would have changed the outcome?

## STATEMENT OF THE CASE

EMS's Statement of the Case adequately sets forth the basic procedural posture of this case, except that EMS begins the timeline with its amended complaint. The amended complaint, however, was filed in response to Gaal's motion to dismiss EMS's original complaint, which lodged the same arguments as Gaal's motion to dismiss the amended complaint. (*Compare Motion to Dismiss*, R. 33, Page ID ## 148–53 *with Motion to Dismiss Amended Compl.*, R. 43, Page ID ## 320–25.) Thus, when the district court dismissed EMS's amended complaint without leave to amend, EMS had already received one opportunity to cure any curable defects. Factual deficiencies contained in EMS's Statement of the Case are addressed below in Gaal's Statement of Facts.

# STATEMENT OF FACTS

## *Background*

EMS sued Peter Gaal, the sole member of now-defunct Procom, seeking to recover alleged business debts EMS contends he personally guaranteed. While in business, Procom offered historical tours of Europe that followed the path of Easy Company, 2nd Battalion of the 506th Parachute Infantry Regiment of the 101st Airborne Division during World War II, as documented in the HBO miniseries *Band of Brothers*. (*See Motion to Dismiss*, R. 33, Page ID # 135.) In 2014, Procom contracted with EMS in order to enable its customers to use credit cards to pay for tours booked through its website, in exchange for certain fees, including chargeback fees. (*2014 Agreement*, R. 40-1, Page ID ## 277–84.)

## *Applicable Contracts*

The 2014 Agreement between Procom and EMS contains the following provisions:

> **25. Entire Agreement.** This Agreement, including the Application and any other documents executed in conjunction herewith, constitutes and expresses the entire agreement and understanding between the Merchant, Bank and EMS with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings, inducements, or conditions, by Bank, EMS or its sales representative, whether expressed or implied, oral or written.
>
> . . .

**31. Survival.** All representations, warranties and covenants shall survive the termination of this Agreement.

(*Id.* at Page ID # 280.) Gaal's personal guaranty, contained within the

2014 Agreement, provides in pertinent part:

> The undersigned (jointly and severally if more than one) in consideration of BANK and EMS entering into **this Merchant Agreement** ("Agreement") with the above named Merchant, hereby absolutely and unconditionally **guarantee the full and prompt payment of any and all amounts owed to BANK and EMS and the performance of all MERCHANT'S obligations <u>under this Agreement</u> as may be subsequently amended from time to time, whether before or after termination or expiration of the Agreement.**

(*Id.* at Page ID # 282.)

The 2019 Agreement was executed on June 10, 2019. (*2019 Agreement*, R. 40-2, Page ID ## 285–92.) Gaal did <u>not</u> personally guarantee the 2019 Agreement – another individual named Debra Watkins did. (*Id.* at Page ID # 286.) The 2019 Agreement contains the following integration clause:

> **24. Entire Agreement.** This Agreement, **<u>including the Application and any other documents executed in conjunction herewith</u>**, constitutes and expresses the **<u>entire agreement and understanding between the Merchant, Bank and EMS</u>** with respect to the subject matter hereof and **<u>supersedes all prior and contemporaneous agreements and understandings, inducements, or conditions</u>**, by Bank, EMS or its sales representative, whether expressed or implied, oral or written.

(*Id.* at Page ID # 291.) Also of note, unlike the 2014 Agreement, which capped chargeback fees at $25.00 per chargeback, the 2019 Agreement places no upper limit on chargeback fees. (*Id.* at Page ID ## 289–90.)

*Facts Underlying EMS's Claims*

In 2020, the COVID-19 pandemic placed a halt on international travel, precluding Procom from being able to carry out its tours. (*See Motion to Dismiss*, R. 33-1, Page ID # 242.) When travel restrictions went into place, customers already had tours booked. Some had booked their tours, to take place in 2020 or later, as early as 2018, using credit cards to make the payment. (*Id.*) Many customers whose tours were never realized ultimately received a refund from their credit card companies. (*Id.*) The credit card companies, in turn, recouped these refunds from EMS. (*Id.*) In this action, EMS characterizes these amounts as "chargebacks" and seeks to recover the entire amount from Gaal, on the basis of his personal guaranty, as it has not yet succeeded in collecting from Procom. (*Id.*)

Procom is currently in bankruptcy proceedings in the Bankruptcy Court for the Middle District of Florida (Case No: 8:20-bk-03522-MGW). EMS filed a proof of claim therein for $9,970,697.48 in alleged chargebacks, plus any subsequent chargebacks. (*Motion to Dismiss*, R. 33-1, Page ID ## 160–247.) In this action, EMS seeks to recover the same alleged debt, which EMS alleges has grown to over $10,000,000.00. (Opening Br., at 6.) Per EMS's proof of claim, every single

chargeback occurred <u>after</u> June 10, 2019. (*Motion to Dismiss*, R. 33-1, Page ID ## 242–44.) EMS never challenged the district court's ability to take judicial notice of the proof of claim, nor did EMS ever dispute the accuracy of the chargeback-related information contained therein.

Curiously, however, Mr. Moenich's affidavit, submitted in connection with EMS's opposition to Gaal's motion to dismiss EMS's amended complaint, alleged that 191 of the chargebacks (of the total 1,881) occurred *before* June 10, 2019. (*Moenich Affidavit*, R. 47-1, Page ID # 354, ¶ 16.) EMS now concedes, however, that Mr. Moenich was mistaken. (Opening Br., at 4 n.2 ("The affidavit of Daniel Moenich states that 191 chargebacks occurred prior to June [10], 2019, however, 191 transactions later charged back occurred prior to June [10], 2019.").) Accordingly, <u>EMS concedes</u>, and <u>it is not in dispute</u>, that <u>every single chargeback occurred after June 10, 2019, with the first one occurring in March of 2020</u>.[1]

EMS has acted inconsistently with its current argument that the 2014 Agreement continues to govern chargebacks of transactions that occurred while it was in effect. Consistent with the 2019 Agreement, EMS assessed a $45 fee for each chargeback, including those with original transaction dates prior to June 10,

---

[1] Also with respect to the Moenich affidavit, EMS cites to the affidavit for its allegations regarding its subjective intent in entering into the 2019 Agreement. (Opening Br., at 4-5.) But EMS had already made all of these allegations in its amended complaint. (*Amended Complaint*, R. 40, Page ID # 271, ¶¶ 8–9.)

2019. *See* Proof of Claim No. 528 at Ex. 5, *In re Procom America, LLC*, 20-bk-3522 (M.D. Fla. Bankr. Aug. 13, 2020). As noted above, a $45 chargeback fee was authorized only under the 2019 Agreement, whereas the 2014 Agreement capped the chargeback fee at $25. (*Compare 2014 Agreement*, R. 40-1, Page ID # 278, *with 2019 Agreement*, R. 40-2, Page ID # 286.)

## SUMMARY OF ARGUMENT

Applying longstanding principles of contract interpretation, the district court correctly concluded that "Gaal's personal guaranty does not extend to any of the chargeback debt that EMS seeks to recover in this action," which forecloses EMS's breach of contract claim against Gaal. Such matters are properly decided as a matter of law at the pleadings stage.

By the terms of Gaal's personal guaranty, it is limited to "[Procom's] obligations under [the 2014] Agreement" and does not extend to Procom's obligations under other agreements not yet in existence at the time the guaranty was executed. The district court correctly interpreted the 2019 Agreement as superseding the 2014 Agreement, most notably because it contains an integration clause providing that it "supersedes all prior and contemporaneous agreements and understandings [between EMS and Procom]," and further, because the chargeback provision was modified, to EMS's benefit, to increase the highest permissible chargeback fee. Gaal did not personally guarantee the 2019 Agreement – another individual named Debra Watkins did.

All chargebacks occurred – as EMS now concedes – after June 10, 2019, the effective date of the 2019 Agreement. Additionally, EMS assessed a $45 fee for every chargeback in accordance with the fee schedule set forth in the 2019 Agreement (but which would not have been permitted under the 2014 Agreement).

Further, the 2014 Agreement does not provide for any "continuing chargeback liability" post-termination. Accordingly, the district court properly determined that every chargeback arose under while the 2019 Agreement was in effect (at which point the 2014 Agreement had been rendered a legal nullity) and thus represents an obligation arising under the 2019 Agreement. Gaal did not guarantee any such obligations – again, his personal guaranty is confined to obligations arising under the 2014 Agreement. As such, Gaal cannot be held liable for a single one of the chargebacks at issue in this case.

EMS's farfetched attempt to escape dismissal by claiming that the parties entered into the 2019 Agreement "simply [as] an administrative function … [intended] merely [as] a *supplement* to the 2014 Agreement," as opposed to a new contract that would supersede the 2014 Agreement entirely, offends the most basic principles of contract interpretation. The relevant language is plain and unambiguous, which EMS has never disputed, rendering irrelevant any extrinsic evidence of EMS's alleged subjective intent. The 2019 Agreement means exactly what it says: that it supersedes the 2014 Agreement.

EMS's procedural arguments resoundingly fail. A common theme, EMS challenges the district court's taking of judicial notice of information (regarding chargeback dates) in its proof of claim filed in Procom's bankruptcy case, yet EMS never disputed (and EMS now concedes) the accuracy of that information. Nor did

EMS contest the district court's ability to do so. Accordingly, the district court did not abuse its discretion in this regard.

Similarly, EMS challenges the district court's disregard of the Moenich affidavit, yet fails to identify any contents thereof that, even if true, would alter the result reached – i.e., the inescapable conclusion that Gaal's personal guaranty does not extend to any of the chargebacks at issue. Also worth noting, the Moenich affidavit presented impermissible matters beyond the pleadings, contained a factual allegation about chargeback dates that EMS concedes is untrue (and which contradicts EMS's proof of claim), and needlessly re-alleged verbatim allegations already found in EMS's amended complaint regarding EMS's subjective intent in entering into the clear and unambiguous 2019 Agreement, which is not relevant.

There was no reason for the district court to convert the motion to one for summary judgment in order to allow consideration of the Moenich affidavit, or to allow EMS to amend its complaint a second time so that it could "assert the facts contained in the [Moenich] Affidavit in the pleading itself," neither of which EMS requested but which EMS now complains the district court should have done. Given that chargeback dates are not in dispute, neither of these courses of action would have led to a different result. The district court, therefore, did not abuse its discretion in not affording such relief.

# ARGUMENT

## I. The Court Should Affirm the Dismissal of EMS's Complaint.

### A. The District Court Properly Dismissed EMS's Claim for Breach of Contract.

Under sound principles of contract interpretation, there is no possible interpretation – and EMS offers none – of the applicable agreements under which Gaal can be held personally liable for any of the alleged chargebacks at issue in this case.[2]

EMS's breach of contract claim "boils down to a single, dispositive issue: whether Procom's chargeback debt accrued under the 2014 Agreement or under the 2019 Agreement." (*Order granting Motion to Dismiss*, R. 49, Page ID # 425.) Resolution of this issue requires two questions to be answered: Was Gaal a guarantor of the 2019 Agreement? Were the chargebacks incurred under the 2019 Agreement or the 2014 Agreement? With the key facts (most notably, that all chargebacks occurred <u>after</u> June 10, 2019) not in dispute, this determination requires nothing more than contract interpretation, which is properly decided as a matter of law at the pleadings stage. *See In re Fifth Third Early Access Cash Adv.*

---

[2] Gaal responds in this brief to the arguments raised by EMS, without waiving any of the additional arguments contained in his motion to dismiss the amended complaint that the district court did not reach.

*Litig.*, 925 F.3d 265, 276 (6th Cir. 2019) (citing *Envision Waste Servs., LLC v. Cty. of Medina*, 83 N.E.3d 270, 275 (Ohio Ct. App. 2017)).

The district court determined that the "clear and unambiguous integration clause, which states that the 2019 Agreement 'supersedes all prior and contemporaneous agreements and understandings' between EMS and Procom … confirms that EMS and Procom intended for the 2019 Agreement to govern their future dealings—meaning that if any part of the 2019 Agreement expressly alters a term in the 2014 Agreement, then the 2019 Agreement supersedes the original contract with respect to that term." (*Order granting Motion to Dismiss*, R. 49, Page ID # 426 (citing *2019 Agreement*, R. 40-2, Page ID # 291).) "[T]he chargeback provision was, in fact, altered to EMS's benefit by the 2019 Agreement: while EMS could impose a fee of no more than $25 for each chargeback under the 2014 Agreement, that fee amount was increased to a flat $45 fee per chargeback under the 2019 Agreement." (*Id.* at Page ID # 426.) Also worth noting, the 2014 Agreement does not provide for continuing liability for chargebacks after termination. (*See 2014 Agreement*, R. 40-1, Page ID # 284.)

The district court properly rejected EMS's attempt to characterize the 2019 agreement as a "supplement" to the 2014 agreement, correctly noting that "the parties' subjective intent has no role in contract interpretation where, as here, the relevant contract language is plain and unambiguous." (*Id.* at Page ID ## 426–27

(citing *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763–64 (6th Cir. 2008).) To hold otherwise would "alter a lawful contract by imputing an intent contrary to that expressed by the parties" in the 2019 Agreement, which is impermissible. *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 797 N.E.2d 1256, 1261–62 (2003). The district court, therefore, correctly determined that by executing the 2019 Agreement, "EMS and Procom intended to—and did—supersede the 2014 Agreement." (*Order granting Motion to Dismiss*, R. 49, Page ID # 426.)

The next step of the analysis is straightforward. The district court correctly concluded, and EMS now concedes, that all chargebacks at issue occurred in March 2020 or after. While certain of these chargebacks stemmed from *original transactions* that occurred prior to June 10, 2019, the *chargeback itself* did not occur until March of 2020 at the earliest. By this time, the 2019 Agreement (which Gaal did not guarantee) was the operative agreement.

Because all chargebacks arose under the 2019 Agreement, they are beyond the reach of Gaal's personal guaranty, which by its plain language makes Gaal liable only for obligations arising under the (then-defunct) 2014 Agreement: "Gaal has no obligation because Procom had no outstanding chargeback debt—or, more specifically, no chargeback debt that is sought in this lawsuit—when the 2019 Agreement was executed." (*Order granting Motion to Dismiss*, R. 49, Page ID # 428 (citing *CBS Personnel Servs., LLC v. Canadian Am. Trans, Inc.*, 290 F. Supp.

16

2d 879, 886 (S.D. Ohio 2003) (holding that a guarantor was not liable for debts that accrued after the execution of a superseding contract but was liable for debts that accrued prior to that date)).). Removing any doubt that the chargebacks arose under the 2019 Agreement, "EMS assessed a $45 fee for each chargeback, including those with original transaction dates prior to June 10, 2019" – a fee "authorized only by the 2019 Agreement, whereas the 2014 Agreement capped the chargeback fee at $25." (*Id.* at Page ID # 428 (comparing *2014 Agreement*, R. 40-1 at Page ID # 277 with *2019 Agreement*, R. 40-2 at Page ID # 286).) Gaal's guaranty simply does not extend to liabilities arising under the 2019 Agreement.

On appeal, EMS launches a hodgepodge of procedural challenges. But in light of EMS's concession that no chargebacks occurred before June 10, 2019, none of these alleged procedural improprieties can be said to have made any difference. The common theme is that EMS, in its view, should have been permitted to offer more for the court's consideration. But even putting aside additional shortcomings set forth below, had EMS gotten its way, the outcome would be the same – dismissal of EMS's breach of contract claim as a matter of law.

For example, EMS takes issue with the district court's refusal to consider the Moenich affidavit, and in light of this, complains that the court should have "allowed [EMS] to provide Rule 56 evidence" or amend its complaint for a second time in order to add certain allegations included in the affidavit. But the Moenich

affidavit adds *nothing*. As to the chargeback dates, EMS now concedes that what is stated in the affidavit is untrue. As to EMS's subjective intent concerning the 2019 Agreement, the lack of ambiguity in the applicable contracts precludes the district court from considering such evidence. Nor does EMS identify any "Rule 56 evidence" that would alter the conclusion that the 2019 Agreement supersedes the 2014 Agreement, and that all chargebacks arose under the 2014 Agreement. Similarly, EMS complains about the court's consideration of certain information contained in its sworn proof of claim filed in Procom's bankruptcy case without giving Procom a chance to conduct discovery, yet EMS *does not dispute* the accuracy of the information upon which the district court relied (the undisputed chargeback dates).

EMS's arguments beg the question: what would be different had the court permitted EMS to amend its complaint again, considered the Moenich affidavit, etc.? Nothing can change the undisputed fact that all chargebacks occurred <u>after</u> June 10, 2019, which, under the plain language of the applicable agreements, is fatal to EMS's breach of contract claim no matter what other facts may be true. Accordingly, the district court correctly ruled that "the relevant contracts foreclose EMS's attempts at recovery as a matter of law, and Gaal is entitled to dismissal." (*Order granting Motion to Dismiss*, R. 49, Page ID # 429.)

**B.      The District Court Did Not Abuse its Discretion in Considering Undisputed Information Contained Within EMS's Proof of Claim.**

EMS's first argument is that, because its amended complaint did not reference Procom's bankruptcy proceedings, the district court could not consider EMS's sworn creditor's claim. (Opening Br., at 9–10.) This Court reviews a district court's decision regarding whether to take judicial notice of facts only for an abuse of discretion. *Price v. Jefferson Cnty. Kentucky*, 9 F. App'x 369, 370 (6th Cir. 2001). EMS misreads *Rondingo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). There is no rule restricting consideration of public records to those mentioned in a complaint. That limitation applies only to "exhibits attached to a defendant's motion to dismiss." *Id.* (quoting *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)), *quoted at* (Opening Br., at 9–10.) Courts may consider public records in ruling on a motion to dismiss regardless of whether they are referenced in – or deliberately omitted from – the plaintiff's complaint.[3] *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (cited in *Bassett*, 528 F.3d at 530); *see also Hancock v. Miller*, 852 F. App'x 914, 919–20 (6th Cir. 2021) (citing cases).

EMS' argument that the district court should have converted its motion into a motion for summary judgment due to its rejection of the affidavit of Daniel

---

[3] EMS referenced the bankruptcy proceedings in its original complaint. (*Complaint*, R. 1, Page ID # 2.)

Moenich is similarly incorrect. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 484 (6th Cir. 2020) (citing *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 502–04 (6th Cir. 2006)). Doing so would not have altered the court's legal conclusions, based upon the clear and unambiguous language of the 2014 Agreement and 2019 Agreement, that the 2019 Agreement superseded the 2014 Agreement, that Gaal is not a guarantor of the 2019 Agreement, and that the chargebacks all arose under the 2019 Agreement. No allegations of EMS's intent, nor any other matters outside the four corners of the agreements themselves, could have made EMS's contract claim against Gaal viable.

The district court, therefore, did not abuse its discretion by considering undisputed information contained in EMS's sworn proof of claim.

### C. **Because Further Amendment Would Have Been Futile or Fraudulent, the District Court Properly Exercised its Discretion in Dismissing EMS's Complaint with Prejudice.**

Next, EMS complains that if Daniel Moenich's affidavit had been considered, the district court "would have determined that 191 transactions that were subsequently charged back to Procom . . . occurred prior to June 6, 2019, and there is a question of fact as to whether the 2019 Agreement was a new agreement or simply a supplement to the 2014 Agreement. . ." EMS argues that it therefore "should have been given leave to amend the pleadings and assert the facts contained in the Affidavit in the pleading itself." (Opening Br., at 12–13.) Because EMS did

not seek leave to amend or proffer amendments (much less any that would cure the deficiencies), the applicable standard of review here is abuse of discretion. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008).

EMS's argument in this regard is ludicrous on multiple levels. First, and most notably, the district court *did* accept as true EMS's allegation that the 191 transactions at issue occurred before June 6, 2019. (*See Order granting Motion to Dismiss*, R. 49, Page ID # 428 (finding, for example, that EMS applied a $45 fee for chargebacks, including for original transactions dates prior to June 10, 2019).) But the date of an *original transaction* (as opposed to the date that a given transaction was "charged back") was determined to be irrelevant under the Court's well-reasoned analysis. Moreover, EMS now concedes that Mr. Moenich's affidavit gave the wrong dates for the chargebacks. (Opening Br., at 4 n.2.) This belated concession is commendable, but hardly necessary. Mr. Moenich's affidavit was disproven by its own attachments, records confirming that the pandemic-driven chargebacks all occurred in March of 2020 or later. (*Response to Motion to Dismiss*, R. 47, Page ID ## 357–91). It would have been futile to permit an amendment on this point because the date of the original transactions – which, again, was correctly determined by the district court and is not in dispute, would not have altered the court's conclusions. *See Mackie v. Sippel*, No. 11-CV-06146-CJS, 2013 U.S. Dist.

LEXIS 3956, at *20 (W.D.N.Y. Jan. 8, 2013) ("[T]he Court finds that any amendment would be futile, and that providing Plaintiff with another opportunity to amend would amount to an invitation to commit perjury").

Second, EMS offered no theory that would make the remaining contents of the Moenich affidavit relevant. As explained above, extrinsic evidence of intent could only be relevant if the agreements were ambiguous. *See, e.g.*, *Savedoff*, 524 F.3d at 763–64; *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 683-84 (6th Cir. 2000). EMS does not argue now, and did not argue below, that either merchant agreement was ambiguous, despite argument on the point by Mr. Gaal and an adverse finding by the district court. (*Motion to Dismiss Amended Complaint*, R. 43, Page ID # 322; *Order granting Motion to Dismiss*, R. 49, Page ID ## 426–27). As explained above, Gaal's personal guaranty by its terms simply does not extend to any of the chargebacks at issue, which is fatal to EMS's claim regardless of EMS's subjective intent in entering into the 2019 Agreement.

Third, it is worth further noting that Mr. Moenich's allegations regarding EMS's subjective intent were duplicative of allegations already set forth in EMS's amended complaint. (*Compare Amended Complaint*, R. 40, Page ID ## 271–72, ¶¶ 6–18, *with Moenich Affidavit*, R. 47-1, Page ID ## 353–55, ¶¶ 10–19.) Thus, EMS did not lose, or miss out on an opportunity to present allegations of its subjective intent, on a "procedural technicality." (Opening Br., at 11.) EMS lost because of the

undisputed facts and the plain language of the applicable agreements. Even on appeal, EMS does not point to any new allegations it could make that would state a contract claim upon which relief could be granted. The district court, therefore, did not abuse its discretion by not permitting another amendment.

**D. The District Court Properly Applied the 2019 Agreement to All Chargebacks Occurring After its Effective Date.**

EMS continues to argue, without any support whatsoever, that if the 2014 Agreement was in effect when a particular transaction occurred, the chargeback of that transaction is governed by the 2014 Agreement, even after the 2019 Agreement superseded the 2014 Agreement and rendered it a legal nullity. (Opening Br., at 13–14.) This "argument" is insufficient to establish reversible error.

EMS also raises a new, unpreserved argument: that the personal guaranty survives because potential future chargebacks were what EMS labels a "contingent debt." (Opening Br., at 14 (citing *Orlandi v. Leavitt Family Ltd. P'ship (In re Orlandi)*, 612 B.R. 372, 380 (6th BAP 2020)).) This argument was not raised in the district court and therefore not preserved for appeal. Further, the *Orlandi* case cited by Appellant in support of this argument is inapposite. *Orlandi* addresses whether a guarantor's bankruptcy discharges a personal guaranty; its holding that "a pre-petition personal guaranty is a contingent debt that is discharged in bankruptcy" does nothing to advance EMS's cause. *Id.* at 381. EMS cites another irrelevant case

that addresses inconsistent guaranty provisions contained within a single contract. (Opening Br., at 15 (citing *R.L.R. Invs., LLC v. Wilmington Horsemen's Group LLC*, 22 N.E.3d 233, 240–42 (Ohio Ct. App. 2014)).) But *R.L.R.* did not involve a subsequent contract. Thus, *R.L.R.* does not support the proposition that the 2020 chargebacks are liabilities that accrued under the 2014 Agreement rather than the 2019 Agreement.

EMS next suggests that, under the district court's ruling, individual guarantors might escape debts by unilaterally "terminat[ing] the contract or allow[ing] it to expire." (Opening Br., at 15.) But here, the agreement did not terminate or expire. Instead, the parties voluntarily changed the terms of their ongoing business relationship by executing the 2019 Agreement. Whether the 2019 Agreement is considered a successor agreement or a novation, it replaced the 2014 Agreement as a matter of law.

And EMS is in no position to challenge whether a novation occurred. Below, EMS offered only flat, unreasoned denials in response to Mr. Gaal's arguments that the 2019 Agreement was a novation. (*Response to Motion to Dismiss*, R. 47, Page ID ## 348–49 (containing the only four instances of the term "novation" in EMS's opposition to the motion to dismiss; demonstrating EMS's rebuttal argument was limited to "it is not").). Between its failure to raise any meaningful objection below and its failure to identify or brief the issue on appeal (notwithstanding the cursory

mention of the issue on page 18 of the opening brief), the Court should proceed as though EMS has both forfeited and waived any argument that the 2019 agreement was not a novation. *United States v. Russell*, 26 F.4th 371, 374-75 (6th Cir. 2022) (citing cases); *United Food & Commer. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 349 n.3 (6th Cir. 1998); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 508 F. Supp. 3d 186, 207 (N.D. Ohio 2020); *see also Kinch v. Pinnacle Foods Grp., LLC*, 758 F. App'x 473, 479-80 (6th Cir. 2018) (citing cases).

As for the supposedly unintended result, sophisticated parties like EMS are presumed to intend what the language of their agreement requires. (Opening Br., at 16.) EMS, as the drafter of the 2019 Agreement, cannot complain that it fails to accurately capture EMS's subjective and unexpressed intent to retain parts of the 2014 Agreement. Moreover, any alleged intention by EMS that the 2014 Agreement would continue to control chargebacks of original charges made prior to the 2019 Agreement is belied by the fact that EMS is seeking the $45.00 chargeback fee under the 2019 Agreement rather than the $25 chargeback fee under the 2014 Agreement. (*Order granting Motion to Dismiss*, R. 49, Page ID ## 426, 428).

The district court, therefore, properly ruled that the 2019 Agreement applies to all chargebacks after its effective date, regardless of when the sale occurred.

### E. The District Court Correctly Determined that Gaal's Personal Guaranty Died with the Termination of the 2014 Agreement.

Finally, EMS again argues without support that the 2019 Agreement was not a superseding agreement or novation. (Opening Br., at 16–18.) As noted above, EMS failed to properly preserve this argument for appeal. Further, EMS relies on extrinsic evidence of intent, which is irrelevant because the 2019 Agreement is not ambiguous. And again, EMS's argument is the functional equivalent of "because I say so."

The 2019 Agreement is clear that it supersedes the 2014 Agreement. (*See 2019 Agreement*, R. 40-2, Page ID # 291 ("[The 2019 Agreement] supersedes all prior and contemporaneous agreements and understandings [between EMS and Procom].").) Similarly, the language of the guaranty contained in the 2014 Agreement plainly limits Gaal's guaranty obligations to "[Procom's] obligations under [the 2014] Agreement." (*2014 Agreement*, R. 40-1, Page ID # 282 (emphasis added).) EMS cannot rely on the Moenich affidavit to attempt to establish an alleged subjective intention of EMS that is directly contrary to the language of the 2019 Agreement. The case cited by EMS, *Chapman Drug Co. v. Brewer*, 390 F. Supp. 264 (E.D. Tenn. 1974), does not hold differently. (Opening Br., at 17.) Applying an unrevoked personal guaranty despite a slight change in the name of the primary obligor, as the *Chapman Drug* court did, is a far cry from applying a guarantee to

debts to which the guaranty does not extend, which would contravene basic contract law. Accordingly, the district court properly determined that Gaal's guaranty died with the 2014 Agreement.

## **CONCLUSION**

The Court should affirm the district court's decision dismissing EMS's complaint with prejudice.

Respectfully submitted,

*/s/ Alexander J. Durst*
Alexander J. Durst
Gray R. Proctor
THE DURST LAW FIRM
810 Sycamore St., 2nd Floor
Cincinnati, OH 45202
Tel: (513) 621-4999
Fax: (513) 621-0200
Email: alex@durstlawfirm.com
gray@durstlawfirm.com

*Counsel for Defendant-Appellee,*
*Peter Gaal*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 5,546 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Alexander J. Durst*
Alexander J. Durst

## CERTIFICATE OF SERVICE

I hereby certify that, on October 14, 2022, I electronically filed the foregoing Brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ *Alexander J. Durst*
Alexander J. Durst

# **ADDENDUM**

Pursuant to 6. Cir. R. 28(b)(1)(A)(i) and 30(g)(1), Defendant-Appellant has designated the following docket entries from the district court below.

| R. # | Description | Page ID # Range |
|------|-------------|-----------------|
| 1 | Plaintiff's Complaint | 1-17 |
| 33 | Defendant's Motion to Dismiss | 128-255 |
| 40 | Plaintiff's Amended Complaint | 270-96 |
| 43 | Defendant's Motion to Dismiss Plaintiff's Amended Complaint | 301-31 |
| 47 | Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Amended Complaint | 338-406 |
| 48 | Defendant's Reply in Support of Motion to Dismiss Plaintiff's Amended Complaint | 407-19 |
| 49 | Opinion & Order Granting Defendant's Motion to Dismiss Plaintiff's Amended Complaint | 420-29 |